UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 1 8 2016
```

Jabari Bishop,

                Plaintiff,

–v–

City of New York *et al.*,

                Defendants.

13-cv-9203 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Jabari Bishop brings this *pro se* suit against the City of New York (the "City") and three unnamed New York City Police Department ("NYPD") officers under 42 U.S.C. § 1981 *et seq.*, the New York State Constitution, New York State Civil Rights Law ("NYSCRL") § 79-n(2), and New York tort law. Bishop alleges that he was stopped and frisked by the officers without reasonable suspicion on the basis of his race. Before the Court is Defendants' motion to dismiss. For the reasons below, that motion is granted in part and denied in part.

## I. Background

### A. Facts

    The following facts are taken from the complaint and assumed to be true for purposes of evaluating the motion to dismiss. Bishop is a black man and a resident of New York City. Am. Compl. ¶ 5. On December 29, 2010, from 12:00 am to 1:00 am, Bishop was sitting in the passenger seat of a car legally parked in front of public housing in the Bronx. *Id.* ¶ 13. Bishop was awaiting the return of his father from a friend's home. *Id.* ¶ 13. During that time period, Bishop was approached by three New York City police officers, one male and two female. *Id.* ¶¶ 7–9, 15.

1

The officers ordered Bishop to get out of the car and stand against it. *Id.* ¶¶ 15–18. They asked him why he was in the area, and if he lived there. *Id.* ¶ 19. Bishop complained that the officers had no right to stop or search him, and asked the officers if he was free to leave. *Id.* ¶ 21. The officers stated that he was not. *Id.* ¶ 22. Each of the three officers proceeded to frisk Bishop. *Id.* ¶¶ 23–24. The officers also searched the back seat of the car and Bishop's father's laptop bag, located on a back seat. *Id.* ¶ 27. They instructed Bishop to empty his pockets, but he refused. *Id.* ¶ 28. The officers questioned Bishop, but he refused to answer any questions but his name, despite being threatened with a night in jail. *Id.* ¶¶ 29–30. After several minutes of fruitless questioning, the officers told Bishop to "have a nice night" and went on their way. *Id.* ¶ 31.

### B. Procedural History

Bishop filed this action on December 30, 2013. Dkt. No. 1. On May 28, 2014, the Court issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), instructing the City of New York to assist Bishop in identifying the John and Jane Doe officers. Dkt. No. 7. The City submitted a letter on August 29, 2014, stating that it had been unable to identify the officers involved despite diligent efforts, and requesting that the Court instruct Bishop to provide additional information. Dkt. No. 12. On September 3, 2014, the Court instructed Bishop to provide the City, no later than October 3, 2014, the following information: (1) whether the officers were in uniform or plain clothes; (2) whether they had a vehicle, and if so, what it looked like; (3) physical descriptions of the officers; and (4) Bishop's date of birth. Dkt. No. 13. On December 23, 2014, the Court *sua sponte* extended Bishop's time to provide this information until January 30, 2015, but warned that failure to comply would result in dismissal for failure to prosecute. Dkt. No. 16.

The City moved to dismiss the case for failure to prosecute on February 13, 2015, complaining that although Bishop had submitted a letter to the City, he failed to provide any additional identifying information regarding the officers involved in the incident. Dkt. No. 17.

2

Bishop responded that he had previously produced descriptions of the officers to the City in a letter dated October 1, 2014, and requested another opportunity to provide any other missing information. Dkt. No. 20. He also cross-moved for an order instructing the City to produce evidence that he claimed it was withholding: (1) video recordings of the incident that would enable identification of the officers, and (2) UF 250 Stop, Question, and Frisk worksheets issued by the relevant precinct during the time period of the incident. *Id.*

The Court denied the City's motion to dismiss for failure to prosecute. Dkt. No. 21. Given the City's good-faith representations that the videos and relevant UF 250 worksheets did not exist, the Court also denied Bishop's request for additional discovery. In "an attempt to right the ship of this litigation," the Court again ordered Bishop to provide the City with the information requested in the Court's September 3, 2014, letter. *Id.* at 7. The Court also instructed Bishop "not [to] renew his request for non-existent discovery materials." *Id.* The Court stated that the City could file a renewed motion to dismiss if, after receiving the additional information, it was still unable to identify the unnamed officers. Plaintiff provided the required information in a letter dated September 29, 2015. Dkt. No. 26.

On January 4, 2016, the City submitted a letter indicating that despite its efforts, it was unable to identify the officers involved in the stop and frisk alleged in the Complaint. Dkt. No. 33. The letter included a statement from Elizabeth M. Daitz, Director of Civil Matters for the NYPD, explaining the methods used to search for the officers' identities. *Id.* Ex. A. The City filed a renewed motion to dismiss on February 11, 2016. Dkt. 37.

## II.   Legal Standard

When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The complaint will survive the motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Although this standard does not require "detailed factual allegations," it "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition to the text of the complaint, the Court may consider documents attached as exhibits, incorporated by reference, or that are "integral" to the complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Where, as here, a plaintiff proceeds *pro se*, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Accordingly, "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008).

### III. Discussion

This opinion divides Bishop's claims into three groups. First, Bishop brings a variety of claims against the officer defendants under 42 U.S.C. § 1981 *et seq.*, the New York State Constitution, NYSHRL, and New York common law. Second, he brings municipal liability claims against the City under Section 1983. Third, he brings claims against the City under the New York State Constitution and NYSCRL. As explained below, the Court denies the motion to dismiss Bishop's Section 1983 claims against the City, but grants the motion with respect to Bishop's other claims.

#### A. Bishop's Claims Against the Individual Officers Are Dismissed Because the Defendants Have Not Been Identified

"It is a general principle of tort law that a tort victim who cannot identify the tortfeasor cannot bring suit." *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997). In *Valentin*, the Second Circuit reversed a dismissal for failure to identify defendant police officers, and remanded with instructions for the District Court to assist the *pro se* plaintiff in identifying them. *Id.* at 76.

4

However, the court of appeals noted that "[t]his opinion is not intended to preclude a finding by the district court, after further inquiry, that the information available is insufficient to identify the defendant with enough specificity to permit service of process, so that dismissal of the complaint is warranted." *Id.* Thus, following *Valentin*, if a plaintiff is unable to identify defendants after being afforded the opportunity for limited discovery with assistance from the Court, his claims must be dismissed. *See, e.g., Cuevas v. City of New York*, No. 07 CIV. 4169 (LAP), 2009 WL 4773033, at *2 (S.D.N.Y. Dec. 7, 2009); *Keesh v. Artuz*, No. 97 CIV. 8417 (AKH), 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008), *aff'd sub nom. Allah v. Michael*, 506 F. App'x 49 (2d Cir. 2012); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293(JFB) (SMG), 2007 WL 74304, at *5 n.7 (E.D.N.Y. Jan. 8, 2007) ("Fictitious parties must eventually be dismissed, if discovery yields no identities." (brackets omitted) (citation omitted)); *Perrelli v. City of E. Haven*, No. 3:02 CV 0008 (GLG), 2004 WL 1202718, at *3 (D. Conn. May 28, 2004) ("[I]f after the completion of discovery, the plaintiff is not able to identify the actual names of the John Doe defendants, the claims against them must be dismissed.").

In this case, the City represents that, despite extensive searching, it has been unable to determine the identities of the unnamed officers. Dkt. No. 33 & Ex. A. Bishop's only response is to renew his request for video records of the incident. Opp. at 3–10. However, the Court has already determined that such records are not available and instructed Bishop "not [to] renew his request for non-existent discovery materials." Dkt. No. 21 at 7; *see Am. Banana Co. v. Republic Nat'l Bank of N.Y.*, No. 99 CIV 1330 AGS, 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000) ("[T]he Court cannot compel production of what does not exist."). Accordingly, Bishop's claims against the individual defendants are dismissed.

### B. Bishop Adequately Pleads *Monell* Claims Against the City

Bishop claims that he was stopped and frisked without reasonable suspicion because of his race, in violation of the Fourth and Fourteenth Amendments, and seeks to hold the City of New York liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Defendants do not

5

argue that Bishop fails to state a claim for violations of the Fourth and Fourteenth Amendments under Section 1983. Instead, Defendants restrict themselves to arguing that Bishop has failed to plausibly allege that his injuries are attributable to the City.

To state a *Monell* claim for municipal liability under Section 1983, a plaintiff must plausibly allege "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The fifth element in turn breaks down into two pieces: plaintiff must plausibly allege the existence of a municipal policy, and that the policy caused (*i.e.* was the "moving force" behind) plaintiff's injury. *Id.* at 37–38. A municipality's failure to supervise, train, or discipline personnel can give rise to *Monell* liability if the need to act to prevent rights violations is so obvious that the failure to do so amounts to a policy of "deliberate indifference." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). The "moving force" requirement is the equivalent of proximate cause, *Cash v. County of Erie*, 654 F.3d 324, 341–42 (2d Cir. 2011), and is generally a question of fact, *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000).

### 1. Dismissal of the Claims Against the Officer Defendants Does Not Require Dismissal of the *Monell* Claims

Defendants first argue that because Bishop's Section 1983 claims against the individual officers have been dismissed, his claims against the City must be dismissed as well. In support of this proposition, the City cites only *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), for the proposition that "if [the] plaintiff cannot show that his constitutional rights were violated by a City actor, then there cannot be *Monell* liability." Defs.' Br. at 16. It is true that "[u]nless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). As a result, dismissal of the individual defendants requires dismissal of the *Monell* claims, "*if* the ruling in favor of the individual defendants resulted from the plaintiff's failure to show that they committed the

alleged tort." *Id.* at 253–54. But the Second Circuit has held that if the individual defendants are dismissed for other reasons a plaintiff can still recover on his *Monell* claim if he can "plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality." *Id.* at 253. "[T]he fact that the suit against the municipal actors was untimely, or that the plaintiff settled with them, or abandoned the suit against them, is irrelevant to the liability of the municipality." *Id.* at 254. Indeed, the Second Circuit has stated expressly that "the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality." *Id.* at 253 (citing *Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002); *Peterson v. City of Fort Worth*, 588 F.3d 838, 842 (5th Cir. 2009)). The City does not cite this relevant Second Circuit authority nor make any attempt to distinguish it. In the absence of any such argument, the Court must apply it. Here, the Court dismissed Bishop's Section 1983 claims against the individual officers because they could not be identified and served, not because the Court determined that he failed to plausibly allege a violation of his constitutional rights. As a result, dismissal on the basis of this argument is impermissible.

### 2. Bishop Plausibly Alleges Municipal Policies

Defendants next argue that Bishop's *Monell* claims fail because he "relies on boilerplate allegations of municipal custom and policy." Defs.' Br. at 15. Defendants are correct that boilerplate assertions of municipal policy are insufficient to state a claim for *Monell* liability. *See, e.g., Cuevas v. City of New York*, No. 07 CIV. 4169 (LAP), 2009 WL 4773033, at *3 (S.D.N.Y. Dec. 7, 2009); *Bradley v. City of New York*, No. 08-CV-1106 (NGG), 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) (collecting cases). But the "boilerplate" allegations rejected in the case law are conclusory statements that the plaintiff's injury resulted from municipal indifference or failure to train without supporting detail. *See, e.g., Cuevas*, 2009 WL 4773033, at *3; *Bradley*, 2009 WL 1703237, at *3; *Matthews v. City of New York*, 889 F. Supp. 2d 418, 444–45 (E.D.N.Y. 2012).

The allegations in the complaint are sufficient for this *pro se* Plaintiff to survive a motion to dismiss. Bishop claims that his Fourth Amendment rights were violated as a result of "the NYPD's policy, practice and/or custom of suspicionless . . . stops and frisks," and the City's "deliberate indifference" to the NYPD's actions. Am. Compl. ¶ 65. And he alleges that his Fourteenth Amendment rights were violated because the City's use of stop and frisk "amounted to 'indirect racial profiling' by targeting blacks and Hispanics disproportionate to their populations." *Id.* ¶ 39. In making these allegations, Bishop describes a number of forms of evidence supporting his claim of municipal policy, including statistics, *id.* ¶¶ 41–44, 50–53, and reports of whistleblowers, *id.* ¶¶ 47–48. He also points to *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013), which contains findings of fact examining internal NYPD documents and analyzing records of millions of stops. *Id.* ¶ 39. Based on the evidence discussed in the opinion, the court in *Floyd* found (1) a widespread practice of, and deliberate indifference to, suspicionless stops and frisks by the NYPD; and (2) a policy of, and deliberate indifference to, disproportionately targeting black and Hispanic New Yorkers for stops and frisks. *Floyd*, 959 F. Supp. 2d at 660–67. Reading Bishop's *pro se* complaint generously, as it must, *Erickson*, 551 U.S. at 94, the Court deems it to allege the facts recounted in *Floyd*, and to connect those facts to the specific allegations that Bishop makes as to the stop and frisk he experienced. *See* Am. Compl. ¶¶ 32–34, 65–66, 75, 78–79, 83, 91–92, 99–100, 114, 120–21, 127. At the motion to dismiss stage, this is sufficient to plausibly allege a municipal policy. *See Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 544 (S.D.N.Y. 2015) (complaint accompanied by Department of Justice report identifying widespread practice was sufficient to plausibly allege *Monell* claim); *see also Corbett v. City of New York*, No. 11-CV-03549 CBA VMS, 2013 WL 5366397, at *5 (E.D.N.Y. Sept. 24, 2013) ("Judge Scheindlin's decisions may have persuasive value . . . in determining whether the NYPD has an unconstitutional stop-and-frisk policy[.]").

### 3. Bishop Plausibly Alleges Causation

Defendants also claim that Bishop "has not demonstrated how these policies subjected [Bishop] to suffer a constitutional violation [sic]." Defs.' Br. at 15. Defendants do not elaborate on this point. At the motion to dismiss stage, *Monell* requires plaintiffs to plausibly allege that a municipal defendant "actually caused or was the moving force behind the alleged violations." *Reynolds*, 506 F.3d at 193. Like tort defendants, those sued under Section 1983 are "responsible for the natural consequences of their actions." *Warner v. Orange Cty. Dep't of Prob.*, 115 F.3d 1068, 1071 (2d Cir. 1996) (brackets omitted) (citations omitted). "In adopting its policies a municipality must take into consideration the reasonably foreseeable conduct . . . of its own employees." *Dodd v. City of Norwich*, 827 F.2d 1, 6 (2d Cir. 1987). A city can be the moving force behind its employees' unconstitutional acts "where the city is aware that its policy may be unconstitutionally applied by inadequately trained employees but the city consciously chooses not to train them, or where the city's official policy . . . is valid, but the city's actual practice is [unconstitutional]." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125–26 (2d Cir. 2004) (citations omitted). "Basic principles of causation would render the policy a proximate cause" of an injury if the injury is "within the scope of the original risk and therefore foreseeable." *Dodd*, 827 F.2d at 6 (internal quotation marks and citation omitted).

In this case Bishop has plausibly alleged municipal policies both permitting and encouraging police to engage in (1) suspicionless stops and frisks, and (2) disproportionate targeting of blacks and Hispanics for stops. Defendants do not contest the plausibility of Bishop's allegation that he is a black man who was subjected to a suspicionless stop and frisk by the NYPD. Although the information cited to in the complaint, without more, may be insufficient to survive a motion for summary judgment, *see Outerbridge v. City of New York*, No. 13 CIV. 5459 (AT) (DCF), 2015 WL 5813387, at *5 (S.D.N.Y. Sept. 30, 2015); *Morgan v. City of New York*, No. 12-CV-704, 2014 WL 3407714, at *7 (E.D.N.Y. July 10, 2014), the *pro se* complaint here sufficiently alleges that Bishop's injury was a foreseeable consequence of City policies to survive a motion to dismiss. *See Toliver v. City of New York*, No. 10 CIV. 3165

9

(PAC) (JCF), 2011 WL 4964665, at *11 (S.D.N.Y. Oct. 18, 2011) (denying motion to dismiss where complaint plausibly alleged deliberate indifference to illegal arrests and that plaintiff was illegally arrested).

### C. Bishop's New York State Law Claims Against the City Are Untimely

In addition to Bishop's federal claims, the complaint also includes claims against the City for violation of the New York State Constitution and New York State Civil Rights Law § 79n-(2). Defendants argue that these claims must be dismissed for failure to (1) serve a notice of claim within ninety days, and (2) file suit within the one year and ninety day statute of limitations set by N.Y. Gen. Mun. Law § 50-i(1). Bishop timely served a notice of claim, *see* Pls.' Br. Ex. F, and the City does not suggest that this notice was inadequate. However, as Defendants point out, Bishop does not contest the statute of limitations argument. The Court therefore assumes without deciding that Bishop's claims are subject to the statute of limitations in Section 50-i. Defs.' Reply at 1; *See Carter v. Univ. of Conn.*, 264 F. App'x 111, 112 (2d Cir. 2008) (applying statute of limitations undisputed by the parties without further inquiry); *Clark v. Scherer*, 28 F. App'x 47, 49 (2d Cir. 2002) (same); *Consiglio v. Ward Trucking, LLC*, No. 11-CV-06100 (RRM) (VVP), 2012 WL 4498895, at *1 (E.D.N.Y. Sept. 27, 2012) (same); *Craig v. Bank of New York Mellon Corp.*, No. 10-CV-4438 (SLT) (RML), 2014 WL 1347225, at *5 (E.D.N.Y. Mar. 31, 2014) (same). Because Bishop's state law claims were not filed until December 30, 2013, just over three years after the incident described in the complaint, they are dismissed as untimely.

### IV.   Conclusion

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part. This resolves Dkt. No. 37.

The Court will refer this case for general pretrial in a separate order.

SO ORDERED.

10

Dated: August 18, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge